IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEROME A. JOHNSON, | § | |
| | § | |
| *Plaintiff*, | § | 5-20-CV-00245-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| PNC BANK, N.A., FEDERAL HOME | § | |
| LOAN MORTGAGE CORPORATION, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the cross-motions for summary judgment filed by Plaintiff Jerome A. Johnson, Dkt. No. 20, and Defendants Federal Home Loan Corporation ("Freddie Mac") and PNC Bank, N.A., Dkt. No. 19. All pretrial matters in this action, removed to federal court by Defendants, *see* Dkt. No. 1, have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 23. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Defendants' Motion for Summary Judgment, Dkt. No. 19, should be **GRANTED** and Johnson's Motion for Partial Summary Judgment, Dkt. No. 20, should be **DENIED**.

**Factual and Procedural Background**

This case arises out of Defendants' alleged failure to originate a home-equity loan in compliance with Texas Constitution Article XVI, Section 50(a)(6)'s requirement that an owner and lender sign a written acknowledgment on the fair-market value of the homestead and that the lender provide the owner with the signed document at closing.

On April 19, 2016, Plaintiff Johnson and his wife Veronica J. Escalante refinanced their homestead with a home-equity loan payable to LoanDepot.com, LLC ("LoanDepot"). *See* Dkt. No. 22-1. As security for the loan, Johnson and Escalante executed a Home Equity Security Agreement with Mortgage Electronic Registration Systems, Inc. ("MERS") as the designated beneficiary. *See* Dkt. No. 22-2.

The Home Equity Security Agreement, in Section 19, incorporates the provisions of Texas Constitution Article XVI, Section 50(a)(6) into its terms:

> **19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply**.
>
> . . . .
>
> It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

*Id.* ¶ 19. Section 19 of the Agreement also gives the lender a 60-day period in which to comply with Section 50(a)(6)'s requirements, once the borrower notifies the lender of any alleged Section 50(a)(6) shortcoming:

> Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, *only after Lender has received said notice, has had 60 days to comply, and Lender has*

> *failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.*

*Id.* (emphasis in italics added).

Section 19 also includes a provision noting that the Lender's right to comply in Section 19 survives the payoff of the extension of credit, and that Section 19 supersedes any section of the Agreement or the Note that is inconsistent with Section 19:

> *Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.*

*Id.* (emphasis in italics added).

Finally, Section 19 also provides that the property owner's acceptance of a release of lien from the lender extinguishes any obligations the lender may have under Section 50(a)(6):

> **23. Release**. Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

*Id.* ¶ 23 (emphasis in original).

At closing, Johnson and Escalante executed a Texas Home Equity Affidavit and Agreement in which they swore under oath that "[t]he Lender and each owner of the Property have signed a written acknowledgement as to the fair market value of the Property on the date the Extension of Credit is made." Dkt. No. 19-1 at 47-51 ¶ I.U. The Agreement further reiterated the note holder's ability to cure any failure to comply with its obligations under the Extension of Credit, as provided by the Home Equity Security Agreement:

> **D.    Opportunity to Comply**. It is agreed that, except as required by law, the Lender or any holder of the Note for the Extension of Credit shall not forfeit any principal or interest on the Extension of Credit by reason of failure by Lender or holder to comply with its obligations under the Extension of Credit, unless the Lender or holder of the Note fails to correct the failure to comply not later than the 60th day after the borrower notifies the Lender or holder of the note of its failure to comply.

*Id.* ¶ II.D.

Contemporaneous with the closing, Johnson and Escalante also signed a document entitled "Texas Home Equity Receipt of Copies" in which they acknowledged receiving "all executed documents signed by said owner at closing related to the extension of credit," including an acknowledgment as to the fair market value of homestead property. *See* Dkt. No. 19-1 at 45.

On October 3, 2019, notwithstanding Johnson's affirmative representations that LoanDepot had signed the fair-market-value acknowledgment at closing and provided him an executed copy of it, Johnson sent Freddie Mac, the new holder of the Note, and PNC, the mortgage servicer,[1] a letter via certified mail in which he denied receiving a signed acknowledgment of fair-market value at closing and requesting that Defendants cure this "problem[]." *See* Dkt. No. 22-4. Tracking information for Johnson's letter reflects that Freddie Mac received a copy of it on October 10, 2019. *See* Dkt. No. 22-5. PNC received the letter on or about November 4, 2019. *See* Dkt. No. 22-10. Defendants didn't respond to Johnson's letter.

Shortly after Johnson transmitted the letter, but before the contractual 60-day cure period had expired, Johnson paid off the loan.[2] Accordingly, on November 25, 2019, MERS, as

---

[1] It's unclear when the Note was transferred to Freddie Mac. The parties, however, agree that at the time Johnson sent the letter, Defendant Freddie Mac was the holder of the Note and Defendant PNC Bank was the mortgage servicer. *See* Dkt. No. 19 at 2; Pl. Orig. Pet. (Dkt. No. 1-2 at 12-21) ¶ 12.

[2] Exactly when Johnson paid off the loan is unclear. Johnson asserts—without any evidentiary support—that he paid it off on October 28, 2019. *See* Dkt. No. 20 at 5. Defendants, on the other hand, contend—citing the Release— that this occurred "on or about November 25, 2019." *See*

nominee for LoanDepot and its successors and assigns, filed a release of mortgage in the real property records. *See* Dkt. No. 19-1 at 25.

On January 7, 2020—notwithstanding the extinguishment of Johnson's debt and the release of the lien—Johnson sued Freddie Mac and PNC for failure to sign and provide him a written acknowledgment of the fair-market value of the property on the day of closing (or timely cure the alleged defect) in violation of Article XVI, Sections 50(a)(6)(Q)(v), (ix) of the Texas Constitution. *See* Dkt. No. 1-2 at 12-21. Johnson also asserted two other constitutional violations but has since abandoned those claims. *Compare id. with* Dkt. No. 19-1 at 30-31.

Currently at issue are Johnson's claims for (1) breach of contract; (2) violation of the Texas Constitution; and (3) suit to remove cloud and quiet title. Johnson seeks Defendants' forfeiture of all principal and interest Johnson paid on the loan, along with attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code. Johnson also requests a declaration pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code that (1) Defendants have failed to cure constitutional defects in the loan documents; (2) the mortgage lien is void for being noncompliant with the Texas Constitution; and (3) title is quieted in Johnson's name.

On February 28, 2020, Defendants removed the case, citing diversity jurisdiction. *See* 28 U.S.C. § 1332; Dkt. No. 1. The parties now each move for summary judgment.[3]

## Analysis

The parties dispute whether LoanDepot—Defendants' predecessor—signed a written fair-market-value acknowledgment and delivered it to Johnson at closing, as required by Article

---

Dkt. No. 19 at 2. This short time differential, however is immaterial to the present dispute. The parties here agree that Johnson paid off the loan before the 60-day cure period had expired.

[3] While Defendants move for summary judgment on all of Johnson's claims, Johnson's motion only pertains to his breach-of-contract claim. *See* Dkt. No. 20 at 1 & n. 1.

XVI, Section 50(a)(6)(Q)(v), (ix) of the Texas Constitution. Defendants haven't produced a signed copy of the acknowledgment, and Johnson now argues—in contravention of his prior representations under oath—that LoanDepot never complied with its obligations in this regard. But there is no independent cause of action for violating Article XVI, Section 50(a)(6) of the Texas Constitution; this type of claim only arises within the context of defending against a foreclosure. Moreover, the terms of the parties' agreement provide that the acceptance of the lien release extinguished Johnson's claims for breach of contract and to quiet title. Finally, Johnson's request for a declaratory judgment is duplicative of his other claims and should be dismissed.

### A.      Johnson Can't Assert a Stand-Alone Claim under the Texas Constitution.

The Texas Constitution prohibits the forced sale of a homestead, except under certain circumstances. One exception is for extensions of credit secured by a voluntary lien against the homestead, so long as the home-equity loan complies with "a litany of exacting terms and conditions set forth in [Section 50(a)(6) of the] [C]onstitution," *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016), including that:

> (v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;
>
> . . . . [and]
>
> (ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made . . . .

Tex. Const., Art. XVI § 50(a)(6)(Q)(v), (ix). Lenders or note holders who fail to comply with these obligations at the time of closing—*and* further "fail[] to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the

lender's failure to comply" by taking the steps described in one of the six subsections—"shall forfeit all principal and interest of the extension of credit." *Id.*(x).

But the "terms and conditions [as set forth in Section 50(a)(6)] are not constitutional rights and obligations unto themselves. They only assume constitutional significance when their absence in a loan's terms is used as a shield from foreclosure." *Garofolo*, 497 S.W.3d at 478. Here, it's undisputed that Defendants never attempted to foreclose. Accordingly, the constitutional rights and obligations implicated by Section 50(a)(6) were never invigorated so as to provide a cause of action or remedy to Johnson, and Johnson's stand-alone claim to enforce these rights should be dismissed. *See id.* at 475 ("Our constitution lays out the terms and conditions a home-equity loan must include . . . . It does not, however, create a constitutional cause of action or remedy for a lender's subsequent breach of those terms.").

**B.      Johnsons' Contract Claim Misreads the Contract and Must Be Dismissed.**

Notwithstanding Johnson's lack of constitutional recourse, a borrower may seek forfeiture through a breach-of-contract claim when a constitutional forfeiture provision is incorporated into the terms of a home-equity loan. *See id.* at 475, 479. Here, paragraph 19 of the Home Equity Security Agreement incorporates the Texas Constitution's Section 50(a)(6)'s forfeiture provision, and Defendants don't argue otherwise. Johnson, therefore, may at least in theory pursue a breach-of-contract claim for an alleged violation of Section 50(a)(6)'s provisions that were so incorporated.

But Johnson's breach-of-contract claim runs afoul of Section 23 of the same Agreement, which provides that the recording of the Release extinguished any contractually incorporated Section 50(a)(6) obligations Defendants would've owed Johnson. Section 23 states that:

> **OWNER'S ACCEPTANCE OF SUCH RELEASE [of the lien securing the Extension of Credit] . . . SHALL EXTINGUISH ALL OF LENDER'S**

**OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION**.

Dkt. No. 22-2 ¶ 23 (emphasis in original). By its plain terms, this provision takes any alleged violation of Section 50(a)(6) out of contention as a breach-of-contract predicate, once a lien release has been accepted. There's no dispute here that the lien release was recorded and accepted. Although the parties' briefing doesn't dwell on what constitutes sufficient "acceptance" of the lien release, Johnson doesn't argue that he didn't accept the release, and there's certainly no dispute that the lien was in fact released. On this record, that is sufficient to trigger Section 23's extinguishment provision and defeat any attempt by Johnson to invoke a failure to comply with Section 50(a)(6) as a breach-of-contract predicate.

There is no merit to Johnson's assertion that Paragraph 19 of the Agreement supersedes Paragraph 23 and prevents extinguishment of any Section 50(a)(6) obligations inuring to his benefit after acceptance of the lien release. Indeed, the portion of Paragraph 19 Johnson invokes provides no benefit to him but rather ensures that the *lender's* 60-day cure period is not extinguished due to a payoff by the borrower. To that end, Paragraph 19 provides that the "*Lender's right-to-comply* as provided in this Section 19 shall survive the payoff of the Extension of Credit" and that the provisions of "Section 19 will supersede any inconsistent provision of the Note or this Security Instrument." Dkt. No. 22-2 ¶ 19 (emphasis added). Moreover, although this provision of Paragraph 19 contemplates a right to comply surviving payoff, it says nothing about what happens following a release of the lien.

The Court interprets the Agreement as a whole and in accordance with the plain meaning of its terms. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). Section 19 and Section 23 don't conflict, as Johnson argues. There's no inconsistency between Johnson's rights under Section 19 extinguishing upon acceptance of the release and the Lender's 60-day cure

rights surviving payoff. Accordingly, nothing in paragraph 19 requires the lender to comply with Section 50(a)(6) once the home owner accepts the lien release, as occurred here.

Regardless, there's no evidence in the record raising a genuine issue of material fact suggesting that Defendants violated Section 50(a)(6). Defendants have introduced competent summary judgment evidence reflecting that Johnson represented—one time under oath and contemporaneously with the closing—that LoanDepot timely signed a written acknowledgment on the fair market value of the property and timely delivered a copy of it to Johnson. *See* Dkt. No. 19-1 at 47-51 (Texas Home Equity Affidavit and Agreement ¶ I.U) & Dkt. No. 19-1 at 45 (Texas Home Equity Receipt of Copies). Johnson hasn't offered any evidence to controvert those prior representations.

Instead, Johnson attests in an affidavit attached to his cross-motion for summary judgment filed after the close of discovery only that: "[o]n April 19, 2016, I signed an Acknowledgment Regarding Fair Market Value of Homestead Property. There was not a signature from Loan Depot or a Loan Depot representative on the document." Johnson Aff. (Dkt. No. 22-15). He then provides a copy of the acknowledgment, which only contains his signature. Dkt. No. 22-3. But under Texas law, "[a] written transaction, such as a contract, lease, deed or the like may be evidenced by several counterparts or identical copies of the written terms, all of them being signed, or at any rate, designed to be considered as of equal force as embodying the transaction." *Dickerson v. Mack Fin. Corp.*, 452 S.W.2d 552, 557 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) (quoting Mccormick and Ray, Texas Law of Evidence, § 1564 at 406). Indeed, given the number of documents involved at closing, loan transactions are commonly accomplished through the execution of counterparts. Even accepting Johnson's

carefully worded statement as true, Johnson has failed to raise a genuine issue of material fact on this issue.[4]

The doctrines of quasi-estoppel and sham affidavit surely also would prevent Johnson from now taking a position contrary to those he asserted in his prior, contemporaneously executed sworn statement.[5] Accordingly, the competent summary judgment evidence of record reflects that LoanDepot signed and delivered to Johnson a fair-market-value acknowledgment.

Johnson's arguments that a lien can't be "estopped into existence" and that Defendants are attempting to use his prior representations to validate an otherwise invalid home equity lien are unpersuasive. As discussed, there is competent summary judgment evidence establishing that

---

[4] Defendants' responses to Johnson's requests for admission in which they state they can't admit or deny whether the acknowledgment maintained by Johnson is a true and correct copy aren't helpful to Johnson on this point. *Compare* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.") *with, e.g., Stockdale v. Stockdale*, No. 4:08-CV-1773 CAS, 2009 WL 5217001, at *2 (E.D. Mo. Dec. 30, 2009) (noting, a "party cannot read into evidence the other party's denial or refusal to admit a fact, as a denial or refusal to answer is not evidence of any fact").

[5] *See, e.g.*, *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Backed Certificates WAMU Series 2007-HE2 Tr.*, No. 4:18-CV-169-ALM-CAN, 2019 WL 2519222, at *4 (E.D. Tex. Apr. 22, 2019), *report and recommendation adopted sub nom.* 2019 WL 5091991 (E.D. Tex. Oct. 11, 2019) (sham affidavit doctrine prevented plaintiff from making statements in an affidavit made long after the loan origination that contradicted those made in his home equity affidavit where plaintiff didn't explain the contradiction or otherwise attempt to resolve the disparity between his statements); *Priester v. Long Beach Mortgage Co.*, No. 4:16-CV-449, 2018 WL 4469679, at *5 (E.D. Tex. Sept. 18, 2018) (plaintiffs were quasi-estopped from arguing, after accepting the benefit of the extension of the credit, that they didn't receive the notice required by the Texas Constitution at least twelve days before the Loan closing took place and that the Loan closing took place in the plaintiffs' living room); *Sierra v. Ocwen Loan Servicing, LLC*, No. CIV.A. H-10-4984, 2012 WL 527940, at *5 (S.D. Tex. Feb. 16, 2012) (rejecting plaintiffs' affidavits stating that they didn't receive copies of the loan documents where plaintiffs signed a receipt verifying they received all such documents one day before closing) (citing *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 309 (5th Cir. 2011) ("We have repeatedly held that self-serving affidavits without more, will not defeat a motion for summary judgment.")).

LoanDepot and its successor Freddie Mac had a valid lien on the property. Johnson is simply estopped from introducing the evidence he offered to contradict his previous sworn statement.

### C.    Johnson's Suit to Remove Cloud and Quiet Title Also Lacks Merit.

There's no dispute here that at the time Johnson initiated this action, the lien had already been released. Because there's no cloud on Johnson's title for the Court to remove, summary judgment should be granted on this claim. *See Lance v. Robinson*, 543 S.W.3d 723, 739 (Tex. 2018) ("The plaintiff in a quiet-title suit must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove.") (quotations omitted).

### D.    Absent a Valid Underlying Claim, Johnson's Declaratory-Judgment Claim Warrants Dismissal.

Finally, summary judgment on Johnson's request for Declaratory Judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code—which the Court construes as a claim under the federal Declaratory Judgment Act[6] —is warranted. This claim duplicates the underlying claims for breach of contract and quiet title, which fail for the reasons discussed above. Accordingly, there is no actual controversy between the parties that could warrant a declaration, and Johnson's request for declaratory relief should be dismissed. *See Davis v. City of Alvarado*, 835 Fed. App'x 714, 719 n.4 (5th Cir. 2020) (affirming dismissal of Declaratory Judgment Act claim where district court dismissed plaintiff's underlying claims); *see also Vestal*

---

[6] *See, e.g.*, *Dowd v. United States Dep't of Educ.*, No. 3:20-CV-713-N, 2021 WL 1865191, at *2 (N.D. Tex. May 10, 2021) (construing plaintiff's Texas Declaratory Judgment claim as a Federal Declaratory Judgment action "[b]ecause federal courts apply federal procedural law in federal actions, the Declaratory Judgment Act governs"); *Santiago v. Allstate Indem. Co.*, No. 5:19-CV-00306-OLG, 2019 WL 10303696, at *3 n.1 (W.D. Tex. Jun. 5, 2019) ("District courts construe state declaratory judgment actions as federal declaratory judgment actions.")

*v. Fed. Nat'l Mortg. Ass'n*, No. CV H-16-3628, 2017 WL 4217165, at *3-4 (S.D. Tex. Sept. 20, 2017).

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment, Dkt. No. 19, be **GRANTED** and Johnson's Motion for Partial Summary Judgment, Dkt. No. 20, be **DENIED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).

Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 26th day of July, 2021.

RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE